*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DAVID A. MONTGOMERY,

Defendant-Appellant.

UNPUBLISHED
September 19, 2025
10:27 AM

No. 368817
Lenawee Circuit Court
LC No. 2005-011503-FH

Before: LETICA, P.J., and RICK and BAZZI, JJ.

PER CURIAM.

Defendant appeals by delayed leave granted[1] the trial court's denial of his motion for relief from judgment. We affirm.

## I. FACTUAL BACKGROUND

In March 2005, defendant pleaded guilty to one count of fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e(1)(b) (force or coercion). As a part of his sentence, defendant was ordered to comply with "any Sex Offender Registration law of this state or any other state in which he resides."

In 2023, defendant, acting pro se, moved for relief from judgment. In his handwritten motion, defendant asked the trial court to remove the requirement that he register under the Michigan Sex Offenders Registration Act (SORA) because forcing him to comply with the 2011 and 2021 versions of SORA would be unconstitutional in light of the Michigan Supreme Court's decision in *People v Betts*, 507 Mich 527; 968 NW2d 497 (2021). The trial court denied defendant's motion, reasoning that defendant was not entitled to relief under MCR 6.500 *et seq.*, because "*Betts* would only apply to Defendant if he had been convicted of failure to comply with the 2011 SORA," and he "has no such conviction from this Court." This appeal followed.

---

[1] *People v Montgomery*, unpublished order of the Court of Appeals, entered April 8, 2024 (Docket No. 368817).

## II. STANDARD OF REVIEW

We review a trial court's decision on a motion for relief from judgment for an abuse of discretion. *People v Owens*, 338 Mich App 101, 113; 979 NW2d 345 (2021). "The trial court abuses its discretion when it makes an error of law or when its decision falls outside the range of reasonable and principled outcomes." *Id*.

"This Court reviews de novo the trial court's interpretation of court rules." *Id*. Constitutional issues are also reviewed de novo. *People v Pennington*, 240 Mich App 188, 191; 610 NW2d 608 (2000).

## III. LAW AND ANALYSIS

Defendant argues that the 2021 version of SORA is criminal punishment, and it is therefore a violation of the Ex Post Facto Clauses of the Michigan and United States Constitutions when applied to him for an offense committed in 2005. We disagree.

As an initial matter, to be entitled to relief under MCR 6.508(D), defendant bears the burden of satisfying the "good cause" and "actual prejudice" requirements in MCR 6.508(D)(3). *People v Swain*, 288 Mich App 609, 630; 794 NW2d 92 (2010). When, as in the present case, the defendant challenges his or her sentence, he or she must demonstrate that "the sentence is invalid." MCR 6.508(D)(3)(b)(*iv*).

The trial court's order does not directly address whether defendant met his burden under MCR 6.508. Instead, the trial court concluded that defendant's motion for relief from judgment was not the correct procedural vehicle to obtain the relief requested:

> In this case, Defendant relies on *People v Betts*, but that reliance is misplaced. *Betts* was a landmark case which held that retroactive imposition of the 2011 Sex Offender Registration Act (SORA) requirements violated the Ex Post Facto clauses. However, *Betts* would only apply to Defendant if he had been convicted of failure to comply with the 2011 SORA. Defendant has no such conviction from this Court. The 2011 SORA amendments are no longer being applied to registrants whose criminal acts predated the enactment of those requirements. *Betts* does not stand for the proposition that individuals such as Defendant who were convicted of a sex offense prior to July 1, 2011 do not have to comply with SORA requirements at all. Defendant may petition to discontinue sex offender registration if he believes that he is eligible, but is not entitled to relief under MCR 6.500 et seq. His motion for relief from judgment is therefore denied.

The trial court's holding that defendant must be convicted of failing to comply with SORA in order to challenge SORA's application is not consistent with recent Michigan Supreme Court orders directing trial courts to consider a defendant's request for removal from the sex offender registry as a part of his or her motion for relief from judgment. For example, in both *People v Smith*, 508 Mich 1033; 969 NW2d 15 (2022), and *People v Pohly*, 508 Mich 1032; 969 NW2d 330 (2022), the Supreme Court vacated trial court orders that denied the defendants' motions for relief from judgment requesting removal from the sex offender registry when the applicable SORA provisions were unconstitutional ex post facto laws under *Betts*.

-2-

Consequently, because recent Michigan Supreme Court orders indicate that a defendant may challenge his or her SORA registration requirements in a motion for relief from judgment, the trial court's holding to the contrary is erroneous. However, we may still affirm the trial court's decision if it nevertheless reached the correct result. See *People v Hawkins*, 340 Mich App 155, 195; 985 NW2d 853 (2022) ("This Court will not reverse when a lower court reaches the right result for the wrong reason."). Accordingly, we will examine the merits of defendant's claim.

Defendant argues that the application of the 2021 version of SORA to his case is a criminal punishment and, therefore, violates the federal and state constitutional prohibitions on ex post facto laws. An ex post facto law is a law that "(1) punishes an act that was innocent when the act was committed; (2) makes an act a more serious criminal offense; (3) increases the punishment for a crime; or (4) allows the prosecution to convict on less evidence." *People v Earl*, 495 Mich 33, 37; 845 NW2d 721 (2014). Ex post facto laws are prohibited by both the United States Constitution and the Michigan Constitution. See US Const, art I, § 10; Const 1963, art 1, § 10. The prohibition on ex post facto laws ensures that "legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed." *Weaver v Graham*, 450 US 24, 28-29; 101 S Ct 960; 67 L Ed 2d 17 (1981).

When the Michigan Legislature enacted SORA in 1994, it was primarily conceived as "a confidential law enforcement tool to manage registrants' names and addresses." *Betts*, 507 Mich at 533-536. The Legislature subsequently amended SORA multiple times, altering both "the nature of the registry and the requirements imposed by it." *Id*. at 533. In 2011, the Legislature "enacted significant structural amendments of SORA." *Id*. at 535. For example, the 2011 amendment "categorized registrants into three tiers on the basis of their offenses and based the length of registration on that tier designation." *Id*., citing MCL 28.722(k) and MCL 28.722(s) through (u), as amended by 2011 PA 17. A registrant's tier designation was also disclosed on the public database. *Betts*, 507 Mich at 535-536, citing MCL 28.728(2)(l), as amended by 2011 PA 18.

In July 2021, the Michigan Supreme Court held that the imposition of the 2011 version of SORA increased a registrant's punishment, and therefore the retroactive application of the 2011 SORA violated the constitutional prohibitions on ex post facto laws in both the state and federal constitutions. *Betts*, 507 Mich at 533, 561. The Court conducted a two-step analysis:

> First, this Court must determine whether the Legislature intended the statute as a criminal punishment or a civil remedy. If the statute imposes a disability for the purpose of reprimanding the wrongdoer, the Legislature likely intended the statute to be a criminal punishment. However, if the statute imposes a disability to further a legitimate public purpose, the Legislature likely intended the statute to be a civil or regulatory remedy.
>
> If the Legislature intended to impose criminal punishment, the retroactive application of such a statute violates the ex post facto prohibitions, and the inquiry ends. However, if the Legislature intended to impose a civil or regulatory remedy, this Court must then consider whether the statutory scheme is so punitive either in purpose or effect as to negate the State's intention to deem it civil. [*Id*. at 542-543 (quotation marks and citations omitted).]

-3-

After evaluating conflicting evidence of the Legislature's intent, the Court concluded that "the Legislature likely intended SORA as a civil regulation rather than a criminal punishment." *Id*. at 549. Consequently, the Court then evaluated whether the 2011 SORA's punitive effects negated the Legislature's intent to deem it civil. The Court considered the factors from the United States Supreme Court's decision in *Kennedy v Mendoza-Martinez*, 372 US 144; 83 S Ct 554; 9 L Ed 2d 644 (1963), including the following:

(1)    "whether SORA has been regarded in our history and traditions as a form of criminal punishment," *Betts*, 507 Mich at 550 (quotation marks and citation omitted);

(2)    "how the effects of the 2011 SORA are felt by those subject to it," *id*. at 554 (quotation marks and citation omitted);

(3)    "whether the 2011 SORA promotes the traditional aims of punishment: retribution and specific and general deterrence," *id*. at 556;

(4)    "whether the 2011 SORA has a rational connection to a nonpunitive purpose," *id*. at 558; and

(5)    "whether the regulatory means chosen are reasonable in light of the nonpunitive objective," *id*. at 559 (quotation marks and citation omitted).

After analyzing each factor, the Court ultimately held that "the 2011 SORA's aggregate punitive effects negate the state's intention to deem it a civil regulation," and the retroactive application of the 2011 SORA violates the federal and state constitutional prohibitions on ex post facto laws. *Id*. at 562.

While *Betts* was pending, the Legislature enacted 2020 PA 295, which amended SORA effective March 24, 2021 (the 2021 SORA). *Betts*, 507 Mich at 538. The 2021 SORA included various "ameliorative" changes, such as removing the registrants' tier classification from the public website and removing the student-safety-zone prohibitions that prevented a registrant from living, working, or loitering within 1,000 feet of a school. *People v Lymon*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 164685); slip op at 3; *Betts*, 507 Mich at 550. The *Betts* Court declined to consider "whether the retroactive application of any post-2011 SORA amendments violates constitutional ex post facto provisions." *Betts*, 507 Mich at 574 n 30.

The Michigan Supreme Court was asked to evaluate whether the 2021 SORA constituted criminal punishment just three years later in *Lymon*, albeit in a slightly different context. *Lymon*, ___ Mich at ___; slip op at 1-2. In *Lymon*, the defendant argued that requiring him to comply with the 2021 version of SORA constituted cruel and unusual punishment under the Michigan Constitution because he was not convicted of a sexual offense. *Id*. at ___; slip op at 8. The *Lymon* Court conducted the same two-step analysis as in *Betts*, concluding first that the Legislature intended the 2021 SORA as a civil regulation. *Id*. at ___; slip op at 13. It then analyzed the *Mendoza-Martinez* factors to determine whether the 2021 SORA is so punitive in its effect as to negate the Legislature's intent to deem it civil. *Id*. The *Lymon* Court concluded that the 2021 SORA does have a punitive effect when applied to non-sexual offenders:

Although the 2021 SORA bears a rational relation to its nonpunitive purpose and the Legislature has continued to express its intention that SORA constitute a civil regulation, SORA resembles traditional methods of punishment, promotes the traditional aims of punishment, and imposes affirmative restraints that are excessive as applied to non-sexual offender registrants. [*Id*. at ___; slip op at 30.]

The *Lymon* Court declined to extend its holding to *sexual* offenders, however, and vacated the opinion of this Court to the extent that it went beyond the consideration of non-sexual offenders:

Our opinion does not reach the question whether the 2021 SORA constitutes punishment as to sexual offenders—and, in fact, explicitly vacates the portion of the Court of Appeals opinion that so concluded. To the extent that portions of our *Mendoza-Martinez* analysis might be relevant to a later appeal that considers whether the 2021 SORA constitutes punishment as to sexual offenders, that relevance does not define the outcome of such a future challenge. The *Mendoza-Martinez* analysis is cumulative, and while some of our analysis here will be relevant to other circumstances, some will not. Perhaps the effects of the 2021 SORA as applied to sexual offenders are so punitive as to outweigh the Legislature's civil intent, and perhaps not. [*Id*. at ___ n 20; slip op at 30 n 20.]

Consequently, after *Lymon*, whether the 2021 SORA constitutes criminal punishment as to sexual offenders was still an open question.

This Court recently analyzed the issue of whether the 2021 version of SORA constitutes criminal punishment when applied to sex offenders in *People v Kiczenski*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 364957); slip op at 1. In *Kiczenski*, the defendant was convicted of two counts of first-degree criminal sexual conduct (CSC-I) following a gang rape in 1980. *Id*. at ___; slip op at 1. He became subject to the requirements of SORA after they first took effect in 1995. *Id*. After he was released from prison, the defendant filed a motion with the trial court, arguing that the 2011 SORA could not be retroactively applied to him because it would violate the constitutional prohibition on ex post facto laws. *Id*. at ___; slip op at 2. The prosecutor conceded that the 2011 SORA could not be applied to the defendant in light of *Betts*, but argued that the registration requirements in the 2021 version of SORA could be enforced because the 2021 SORA did not contain the same excessively punitive elements as the 2011 SORA. *Id*.

This Court then conducted the same two-step analysis that the Supreme Court employed in *Betts* and *Lymon*. *Id*. at ___; slip op at 6. First, this Court echoed the Supreme Court's holding in *Lymon* that the Legislature intended the 2021 version of SORA as a civil regulation. *Id*. at ___; slip op at 6, quoting *Lymon*, ___ Mich at ___; slip op at 13. Next, this Court analyzed the *Mendoza-Martinez* factors to determine whether the effect of the 2021 version of SORA as to sexual offenders is so punitive as to negate the Legislature's civil intent. *Kiczenski*, ___ Mich App ___; slip op at 6. Although the first three factors (history and tradition, affirmative disability or restraint, and traditional aim of punishment) weighed slightly in favor of the 2021 SORA being considered a punishment as to sexual offenders, this Court focused on the fourth and fifth factors. *Id*. at ___; slip op at 7-12.

The fourth factor, i.e., whether the 2021 SORA has a rational connection to a nonpunitive purpose, is "considered to be the most important factor in the overall punishment evaluation." *Id*. at ___; slip op at 8. In its analysis of this factor as applied to sexual offenders, the Court observed:

> The analysis of this factor weighs more heavily against the 2021 SORA being punishment for sexual offenders. While still rational, an additional logical step was required in *Lymon* to connect the non-sexual offenders to the prevention of sexual crimes. This additional step is obviously not needed when the initial offense is itself sexual, as it is here. As recognized in *Betts*, 507 Mich at 558: "The 2011 SORA, by identifying potentially recidivist sex offenders and alerting the public, seeks to further the nonpunitive purpose of public safety. Accordingly, given the low bar of rationality, the 2011 SORA is connected to a nonpunitive purpose." The same is true of the 2021 SORA. [*Kiczenski*, ___ Mich App at ___; slip op at 9.]

Regarding the fifth factor, i.e., excessiveness, this Court observed that the *Lymon* Court's rationale for concluding that the 2021 version of SORA was excessive in light of the non-sexual nature of the offense was not applicable when the defendant is a sexual offender:

> However, while denoting a non-sex offender as a "sex offender" is not accurate and contributes to it being excessive, the opposite is true for the individual who, like defendant, has committed a sex offense. These less restrictive provisions under the 2021 SORA are a great deal less excessive when applied to sex offenders because they are precisely the offenders the Legislature established these regulations for in order to protect against future harm to victims, particularly the young and vulnerable. [*Id*. at ___; slip op at 11.]

This Court also adopted the United States Supreme Court's reasoning rejecting the defendant's argument that the lack of individualized risk assessment renders the 2021 SORA over-inclusive and, therefore, excessive:

> The *Ex Post Facto* Clause does not preclude a State from making reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences. We have upheld against ex post facto challenges laws imposing regulatory burdens on individuals convicted of crimes without any corresponding risk assessment. As stated in [*Hawker v New York*, 170 US 189, 197; 18 S Ct 573; 42 L Ed 1002 (1898)]: "Doubtless, one who has violated the criminal law may thereafter reform and become in fact possessed of a good moral character. But the legislature has power in cases of this kind to make a rule of universal application . . . ." The State's determination to legislate with respect to convicted sex offenders as a class, rather than require individual determination of their dangerousness, does not make the statute a punishment under the Ex Post Facto Clause. [*Kiczenski*, ___ Mich App at ___ n 9; slip op at 12 n 9, quoting *Smith v Doe*, 538 US 84, 103; 123 S Ct 1140; 155 L Ed 2d 164 (2003) (citations omitted).]

Ultimately, this Court concluded that "the 2021 SORA does not constitute punishment as applied to CSC-I offenders," and, therefore, "there is no ex post facto violation" when it is applied retroactively. *Kiczenski*, ___ Mich App ___; slip op at 13.

In the present case, defendant argues that *Kiczenski* was wrongly decided and urges us to reject its holding. However, we must "follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990[.]" MCR 7.215(J)(1). Although this Court's holding in *Kiczenski* was limited to offenders with CSC-I convictions, defendant fails to establish that the circumstances of his CSC-IV conviction should lead to a different result. Indeed, defendant repeats arguments that were considered and rejected in *Kiczenski*, such as the lack of an individualized risk assessment rendering the 2021 SORA excessively punitive. Defendant argues that this Court's decision in *Kiczenski* is inconsistent with our Supreme Court's conclusion in *Lymon* that the 2021 SORA inflicts criminal punishment, but the Court's holding in *Lymon* was specifically limited to non-sexual offenders. *Lymon*, ___ Mich at ___ n 20; slip op at 30 n 20. Defendant was convicted of a sexual offense, and so *Lymon* is not controlling.

Accordingly, defendant has not met his burden to establish that his sentence is invalid in light of this Court's recent precedent in *Kiczenski*, and he has not demonstrated that he is entitled to relief under MCR 6.508(D)(3)(b)(*iv*). Although the trial court erred in concluding that defendant must first be convicted of failing to comply with SORA before he can challenge his sentence pursuant to MCR 6.500 *et seq.*, the court ultimately reached the correct result because defendant has not demonstrated that the application of the 2021 SORA requirements to his sentence is a violation of the constitutional prohibitions on ex post facto laws.

Affirmed.

/s/ Anica Letica
/s/ Michelle M. Rick
/s/ Mariam S. Bazzi